# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GARY REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 12-917 (RCL) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court are the defendants' Partial Motion to Dismiss the Fourth Amended Complaint [30] and the plaintiff's Motion for Leave to File the Fifth Amended Complaint [33]. Upon consideration of each of these motions, the oppositions thereto, and the replies, the defendants' Motion [30] is GRANTED and the plaintiff's Motion [33] is DENIED. And, for the reasons stated herein, the plaintiff's remaining claims will be transferred to the U.S. District Court for the District of Maryland.

## I.  BACKGROUND

Gary Reynolds is a medical doctor previously employed by the federal Bureau of Prisons ("BOP") at the federal detention center in Philadelphia, Pennsylvania. On January 5, 2009, BOP terminated Mr. Reynolds' decade-long tenure as a Medical Officer after finding that Mr. Reynolds improperly performed a breast examination during the pre-employment screening of a female correctional officer. In compliance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320a-7e, BOP reported Mr. Reynolds' actions and subsequent termination to the National Practitioner Data Bank ("the Bank" or

"NPDB")[1]. This case stems from Mr. Reynolds' various challenges to the accuracy and validity of that report.

### A. The National Practitioner Data Bank

The NPDB is maintained by the Department of Health and Human Services ("HHS") and exists to improve healthcare quality by collecting and disseminating information regarding the professional record of healthcare practitioners. Federal agencies are required to report all "adjudicated actions or decisions," including employment terminations, to the NPDB "regardless of whether the [termination] is subject to a pending appeal." 45 C.F.R. § 60.16(a); 45 C.F.R. § 60.3. Subjects of adverse Bank reports who wish to challenge the accuracy or propriety of an NPDB entry must first request that the reporting agency revise the report. 45 C.F.R. § 60.21(b)(3). If the agency declines, or fails to respond within 60 days, the subject may request that the Secretary of HHS review the report for accuracy. *Id*. Secretarial review is limited to the accuracy of the reported information and does not include "the merits or appropriateness of the action or the due process that the subject received." *Id*. § 60.21(c)(1). At the conclusion of the review, the Secretary will decide whether to void the NPDB report or issue a corrected report, typically within 30 days, though more time is permitted for "good cause." *Id*. § 60.21(b)(3); § 60.21(c)(2).

### B. Mr. Reynolds' Administrative Challenge to the NPDB Report

BOP reported Mr. Reynolds' termination to the Bank on February 5, 2009. Fourth Am. Compl., Ex. D (Secretarial Review Decision, June 8, 2010), at 1. The report stated that

---

[1] Prior to May 6, 2013, there were two separate medical data banks—the NPDB and the Healthcare Integrity and Protection Data Bank ("HIPDB"). To eliminate overlap and duplication, Section 6403 of the Patient Protection and Affordable Care Act merged the HIPDB into the NPDB. Patient Protection & Affordable Care Act, Pub. L. No. 11-148 (2010). Only the NPDB exists today.

> A female correctional officer filed a complaint with the agency alleging that a male medical officer misused his power of position while conducting her pre-employment physical examination. This allegation was sustained after an internal investigation was completed. Medical officer was terminated on January 5, 2009.

*Id*. The reason for Mr. Reynolds' termination was listed as a "non-sexual dual relationship or boundary violation." *Id*.

A year later, in January 2010, Mr. Reynolds requested Secretarial review of the NPDB report. On June 8, 2010, HHS issued a decision denying Mr. Reynolds any relief, finding that "when the Federal BOP terminated [Mr. Reynolds'] employment, they were legally required to report [Mr. Reynolds] to the [NPDB]." *Id*. at 3. The decision letter encouraged Mr. Reynolds to seek reconsideration of the decision should he become aware of information that was unavailable to him at the time of his initial review request. *Id*.

### C. District Court Litigation

Aside from his administrative challenge to the NPDB report, Mr. Reynolds filed three separate lawsuits stemming from his tenure with, and termination from, BOP.

*First*, in March 2007, Mr. Reynolds filed Civil Action No. 07-0499 in this Court, alleging employment discrimination on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII case"). The complaint alleged that BOP supervisors restricted Mr. Reynolds' clinical privileges and denied him leave for military training on the basis of his race and as retaliation for a prior discrimination complaint filed by Mr. Reynolds. *Reynolds v. Mukasey*, Civ. No. 07-499, Compl., ECF No. 1. Pursuant to the venue provision of Title VII, 42 U.S.C. § 2000e-5(e)(3), this Court transferred the case to the Eastern District of Pennsylvania, where the Philadelphia detention center is located. Mem. Op., No. 07-499, ECF No. 36. The case, re-captioned Civil Action No. 08-4270, was dismissed on November 29, 2010 after the

parties reached a settlement. *Reynolds v. Mukasey*, No. 08-4270, Order, ECF No. 99. Under the settlement agreement signed on December 24, 2010, BOP agreed to

> [R]emove the January 5, 2009 letter of termination from Plaintiff's personnel file (and all references thereto) and [to] replace it with a form SF-50, noting Plaintiff's resignation from the BOP.

Fourth Am. Compl., Ex. E (Stipulation for Compromise Settlement, Dec. 24, 2010), at ¶ 2 [hereinafter Settlement Agreement].

*Second*, on August 5, 2009, Mr. Reynolds filed Civil Action No. 09-3096 in the Eastern District of Pennsylvania alleging that BOP violated his constitutional right to due process, violated various state and federal statutes, and engaged in tortious conduct against Mr. Reynolds. The district court ultimately dismissed Mr. Reynolds' complaint because "none of the claims alleged therein is viable." *Reynolds v. BOP*, No. 09-3096, Mem. Op., ECF No. 56, at 5. Mr. Reynolds appealed to the U.S. Court of Appeals for the Third Circuit, but withdrew the appeal pursuant to the agreement reached in his Title VII case. *Reynolds v. BOP*, No. 10-4250, Order, ECF Doc. No. 003110395150, Dec. 30, 2010.

*Finally*, on October 20, 2010, Mr. Reynolds filed Civil Action No. 10-5549 in the Eastern District of Pennsylvania challenging the NPDB report regarding his termination. The sole claim presented by Mr. Reynolds was that the NPDB report should have listed the cause for his termination as unprofessional conduct involving sexual misconduct rather than the boundary and relationship violations cited in the report. *Reynolds v. DOJ*, No. 10-5549, Am. Compl., ECF No. 22. On December 24, 2010, roughly two months after Mr. Reynolds filed this complaint, Mr. Reynolds and BOP settled the Title VII case. In a summary judgment motion filed on May 25, 2011, Mr. Reynolds argued that the terms of the settlement—which required BOP to replace the

termination letter with a resignation SF-50—precluded *any* report to the NPDB. S. J. Mot., ECF No. 26, at ¶¶ 41–42.

On July 24, 2011, the district court granted summary judgment in favor of the government, finding that the NPDB report "adequately describe[d] the actions of Reynolds and the corresponding findings of the BOP." Mem. Op., No. 10-5549, ECF No. 31, at 7. As to Mr. Reynolds' argument regarding the settlement agreement, the court found that because Mr. Reynolds failed to advance that argument to HHS, he failed to exhaust his administrative remedies. *Id*. Mr. Reynolds did not appeal.

### D. The Present Case & Corrected NPDB Reports

More than a year after he was first invited to do so, and nearly one year after the December 2010 settlement, Mr. Reynolds requested that HHS reconsider its decision regarding the NPDB report, arguing that the settlement agreement required removal of the report entirely. Fourth Am. Compl., Ex. L (Reconsideration Request, Nov. 27, 2011). Before receiving any response from HHS, Mr. Reynolds filed the present action in June 2012. On October 11, 2012, BOP filed three "corrected" NPDB reports, which supersede the original report. Fourth Am. Compl., Ex. O (Data Bank Entries, Oct. 11, 2011). A letter accompanying the reports informed Mr. Reynolds that if he disagreed with the corrected reports, he could request Secretarial review, which Mr. Reynolds did in August 2013. *Id*. HHS has not yet issued a decision on Mr. Reynolds' request.

The Fourth Amended Complaint alleges nine causes of action: (1) failure of HHS to void the original NPDB report in violation of the Administrative Procedures Act, 5 U.S.C. §§ 701–706 ("APA"); (2) application for a writ of mandamus requiring HHS to void all NPDB reports regarding Mr. Reynolds; (3) failure of BOP to release documents in violation of the Privacy Act, 5 U.S.C. § 552a; (4) failure of BOP to release documents in violation of the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"); (5) failure of BOP to withdraw the initial NPDB report and improper filing of the corrected reports in violation of the APA; (6) application for a writ of mandamus requiring BOP to withdraw the NPBD reports filed in October 2012; (7) deprivation of Mr. Reynolds' liberty interest in having no NPDB reports in violation of the Due Process Clause of the Fifth Amendment; (8) breach of the settlement agreement by failure to allow Mr. Reynolds access to a corrected SF-50 pursuant to the Little Tucker Act, 28 U.S.C. § 1246(a)(2); and (9) retaliation by filing corrected NPDB report in violation of Title VII.

The government has moved to dismiss all except the third and fourth claims alleged in the complaint. For the reasons stated below, the Court will dismiss Counts One, Two, Five, Six, Seven, and Nine of the Fourth Amended Complaint, and transfer Counts Three, Four, and Eight to the U.S. District Court for the District of Maryland. The Court will also deny as futile Mr. Reynolds' motion to amend his complaint.

## II.  ANALYSIS

The government makes the following arguments in support of its motion to dismiss: (1) that the Eastern District of Pennsylvania is the proper venue for the claims arising from the settlement agreement; (2) that the plaintiff's claims regarding the NPDB report are barred by the doctrine of res judicata; (3) that the plaintiff has failed to exhaust his administrative remedies with respect to the corrected NPDB reports; (4) that the writ of mandamus is unavailable to the plaintiff; (5) that the plaintiff has failed to state a claim upon which relief can be granted on his Title VII retaliation claim; and (6) that the District of Maryland, and not this Court, is the proper venue for the plaintiff's claim under the Little Tucker Act, 28 U.S.C. § 1246(a)(2). The Court will address each of these arguments in turn.

### A. Venue

Generally, venue must be established as to each cause of action. *See, e.g.*, *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978). With the exception of Counts Eight and Nine, discussed separately in Sections II.F and II.E, respectively, the venue for each of the plaintiff's claims is governed by 28 U.S.C. § 1391(e)(1), which permits civil actions against officers or agencies of the United States to be brought in any "judicial district in which any defendant resides." Because each of the defendants reside and maintain offices and records in this district, venue is not only proper under § 1391, but is also appropriate "[f]or the convenience of parties and witnesses [and] in the interest of justice" under 28 U.S.C. § 1404(a). The government's argument that venue is more appropriate in the Eastern District of Pennsylvania because that district has "a significant interest in reviewing a challenge to a settlement agreement that it affirmed," is unavailing—first because that court did not "affirm" the settlement but dismissed the case on a joint motion of the parties prior to the execution of the settlement agreement, and second, because interpretation of the settlement agreement is entirely separate from the facts of the underlying case. *Cf. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (noting that, in a case involving the proper jurisdiction for breach of a settlement agreement, "[t]he suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. . . . The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business.").

The Court therefore finds that this district is a proper venue for Counts One, Two, Five, Six, and Seven of the Fourth Amended Complaint.

### B. Res Judicata

The doctrine of res judicata "is designed to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). To this end, the doctrine bars "repetitious suits involving the same cause of action." *C.I.R. v. Sunnen*, 333 U.S. 591, 597 (1948). Suits implicate the same cause of action when they arise from the same "nucleus of facts." *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002). Once a court renders a final judgment on the merits of a cause of action, the parties are forever precluded from "relitigating issues that were or could have been raised in that action." *Id*. Significantly for the present case, dismissal of a case for failure to exhaust administrative remedies is a final judgment that triggers res judicata and bars subsequent litigation based upon the same cause of action. *See e.g.*, *McGee v. D.C.*, 646 F. Supp. 2d 115, 123 (D.D.C. 2009) (collecting cases).

Applying these principles to Mr. Reynolds' complaint, this Court finds that Counts One, Two, Five, Six, and Seven are barred by res judicata. Each of these claims stems from the same nucleus of facts—BOP's submission of the NPDB report and the effect of the Title VII settlement agreement on that report. Mr. Reynolds advances two theories to support these causes of action. First, he alleges that the settlement agreement transformed his termination into a resignation, and second, that this transformation precludes any NPDB report regarding the improper breast examination and his subsequent departure from the BOP. All of the facts and both of these theories were available to Mr. Reynolds while his case was pending in the Eastern District of Pennsylvania; yet, Mr. Reynolds declined to amend his complaint or appeal the district court's judgment. These failures require dismissal of Counts One, Two, Five, Six, and Seven of Mr. Reynolds' complaint.

A case from the U.S. Court of Appeals for the D.C. Circuit, *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981), is particularly instructive. Hardison, a captain in the U.S. Army, alleged that he was wrongfully denied two promotions and scheduled for involuntary discharge from the Army. Captain Hardison simultaneously pursued administrative review and a federal lawsuit. Like Mr. Reynolds, Hardison's administrative appeal was unsuccessful and his federal case dismissed—a decision that Hardison declined to appeal. And, as here, Hardison, "despite his failure to appeal, . . . did not give up altogether," but sought reconsideration of the administrative decision. Unsatisfied with the outcome of that reconsideration, Hardison filed a second federal suit. The D.C. Circuit affirmed the district court's dismissal of Hardison's case, stating

> When Hardison failed to appeal the unfavorable summary judgment ruling of the Michigan court, he permitted the judgment of that court to become final, and forever lost the right to relitigate the issues he had an opportunity to raise before that court.

*Id.* at 1289.

This reasoning applies equally to the present case. Mr. Reynolds' argument that his "new" claim based on the settlement agreement could not have been litigated in the EDPA fails because just as in *Hardison*, Mr. Reynolds *could have*, but did not, properly advance those arguments before the court that first considered his claims. Although the settlement agreement occurred seven months prior to the summary judgment decision, Mr. Reynolds did not seek to amend his complaint or seek a stay of the litigation in order to present the settlement argument to HHS—both court-approved methods for avoiding the res judicata bar. *See, e.g.*, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir. 2001); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 40–41 (2d Cir. 1992). And perhaps most significantly, Mr. Reynolds did not appeal the district court's summary judgment opinion. Rather, he simply brought his claim to a

9

different jurisdiction and hoped for a different result. Allowing Mr. Reynolds' claims to proceed would defeat the purpose of res judicata "to prevent serial forum-shopping and piecemeal litigation." *Hardison*, 655 F.2d at 1288. As the Circuit stated in *Hardison*, "the appeal process is available to correct error; subsequent litigation is not." 655 F.2d at 1288.

Mr. Reynolds also argues that the corrected reports issued in October 2012 create a new cause of action, but this is not so. In *Hardison*, the Circuit considered the question whether the Army had waived the res judicata effect of the summary judgment ruling by agreeing to reconsideration, thereby resurrecting the cause of action. In answer, the Circuit noted that penalizing an agency for its willingness to reconsider would "only serve as a disincentive to future flexibility." *Id*. at 1289. Given the important policy interests served by res judicata, the Circuit held that courts "should act with caution before [finding] an implicit waiver of the res judicata effects of a judgment." *Id*. at 1290. Mr. Reynolds has presented no compelling reason to find an implicit waiver here.

Moreover, neither the statute nor the regulations governing the NPDB require reconsideration of a final review decision; thus, the reconsideration offered by HHS is akin to the standby advisory boards that reconsidered Captain Hardison's promotion, which were not required by statute but created as "an act of administrative grace," *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C. Cir. 1977). Faced with an undesirable outcome of such administrative grace, Mr. Reynolds, like Captain Hardison, must "take the bitter with the sweet." *Hardison*, 655 F.2d at 1290.[2]

---

[2] This case is distinguishable from *Poulin v. Bowen*, 817 F.2d 865 (D.C. Cir. 1987), where the Circuit held that while "a subsequent claim may be the same claim for res judicata purposes, if it has nevertheless been reconsidered on the merits to any extent and at any administrative level, it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion . . . [and] subject to judicial review to the extent of the reopening." In *Poulin*, the Circuit examined Social Security regulations that permitted administrative law judges to dismiss claims based upon res judicata. Rather than doing so, the administrative law judge in *Poulin* expressly declined to dismiss the claim on res judicata grounds and proceeded to adjudicate the case on the merits. Moreover,

Accordingly, Counts One, Two, Five, Six, and Seven of the Fourth Amended Complaint are dismissed.[3]

## C. Exhaustion

Even if Mr. Reynolds could somehow surmount the res judicata bar, the APA violations alleged in Counts One and Five would be subject to dismissal because Mr. Reynolds has—yet again—failed to exhaust his administrative remedies. The APA permits judicial review of "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. HHS regulations, in accordance with HIPAA, delineate an administrative process for challenges to NPDB reports. In response to the reconsideration requested by Mr. Reynolds, BOP has submitted corrected NPDB reports to HHS, and HHS, per Mr. Reynolds' request, is currently reviewing the propriety of those reports. Judicial review at this juncture would improperly interfere with the agency's ability to "exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).

## D. Unavailability of Mandamus Relief

Additionally, the writs of mandamus sought in Counts Two and Six would be unavailable to Mr. Reynolds even if those claims were not precluded by res judicata. The extraordinary remedy of mandamus "generally will not issue unless [1] there is a clear right in the plaintiff to the relief sought, [2] a plainly defined and nondiscretionary duty on the part of the defendant to

---

the government raised the res judicata defense for the first time on appeal. Thus, the Circuit held that "[t]he failure to plead res judicata, coupled with the express waiver at the administrative level, precludes its application now." None of these factors exist in the present case.

[3] Count Seven of the Fourth Amended Complaint alleges a violation of Mr. Reynolds constitutional "liberty interest in having no [NPDB] reports." It is worth noting that in addition to his failure to assert this claim in Civil Action No. 10-5549, which centered on the original NPDB report, Mr. Reynolds actually raised the Fifth Amendment due process argument in Civil Action No. 09-3096. There, his argument that BOP's restrictions on his clinical privileges and subsequent NPDB report infringed upon a constitutional property interest was rejected by the Eastern District of Pennsylvania, Mem. Op., No. 09-3096, ECF No. 56, and Mr. Reynolds withdrew his appeal in that case.

honor that right, and [3] no other adequate remedy, either judicial or administrative, available." *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984). Mr. Reynolds' request for writs of mandamus ordering HHS and BOP to void the NPDB reports fails on each of these three prongs. First, it is not at all clear that a settlement agreement, which neither mentions the NPDB nor negates BOP's finding that Mr. Reynolds grossly abused his power as a physician, relieves BOP of its statutory duty to report such abuse to the NPDB. Second—although both BOP's duty to report Mr. Reynolds' abuse and subsequent termination and HHS's duty to maintain an accurate Data Bank are plainly defined—there is no plain, nondiscretionary duty to remove the reports regarding Mr. Reynolds. Finally, there are administrative remedies available that Mr. Reynolds has failed to exhaust. As such, mandamus is unavailable to the plaintiff and Counts Two and Six are dismissed as Mr. Reynolds has failed to state a claim upon which relief can be granted.

### E. Improper Venue & Failure to State a Claim of Title VII Retaliation

Count Nine of the Fourth Amended Complaint alleges that BOP retaliated against Mr. Reynolds by filing the October 2012 corrected NPDB report in violation of Title VII.[4] Aside from the merits of the claim, the government argues that this this Court is not the proper venue for this claim. Under 42 U.S.C. § 2000e-5(e)(3), a plaintiff may bring a Title VII action in (1) any judicial district in the State in which the unlawful employment practice is alleged to have been committed; (2) the judicial district in which the employment records relevant to such

---

[4] Though the Court dismissed other Counts relating to the settlement agreement and the NPDB report as barred by res judicata, Mr. Reynolds' claims under the Little Tucker Act and Title VII are not precluded. Count Eight alleges that BOP breached the settlement agreement by refusing to grant Mr. Reynolds access to the SF-50 promised in the agreement, which negatively affected Mr. Reynolds' efforts to secure new employment. Because the alleged breach occurred after the prior suit, Civil Action No. 10-5549, was dismissed, it could not have been litigated in that case and is not barred by res judicata. Count Nine alleges that the corrected NPDB reports were not prompted by Mr. Reynolds' reconsideration request, but were an act of reprisal for Mr. Reynolds' prior claims of discrimination. Claims based upon acts of discrimination occurring after an initial final judgment are not precluded by res judicata. Indeed, in his concurring opinion in *Hardison*, for example, Judge Bazelon noted that had Captain Hardison's second complaint alleged an "unlawful act such as discrimination," such a claim would have been proper. *Hardison*, 655 F.2d at 1290. In other words, administrative grace may not be used a shield for unlawful discrimination.

practice are maintained and administered; (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice; or (4) if the respondent is not found within any such district, the judicial district in which the respondent has its principal office. The unlawful employment practice alleged by Mr. Reynolds is the submission of the corrected NPDB report in retaliation for his prior discrimination complaints. In his opposition to the government's motion, Mr. Reynolds avers that the address listed for BOP on the NPDB report is in the District of Columbia; presumably, records regarding the report are maintained in the District as well. Venue is proper in this district and the government's motion on this point is denied.

The government next alleges that Mr. Reynolds has failed to state a claim of retaliation and moves this Court to dismiss this claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Although Rule 8(a)(2) does not require "detailed factual allegations," a complaint must present more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. Taken together, the facts alleged in the complaint must be sufficient to raise a plausible claim and to permit "the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In deciding the motion, the Court must "accept the plaintiff's factual allegations as true and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Browning*, 292 F.3d at 242. The facts alleged in Count Nine of Mr. Reynolds' complaint must therefore be sufficient to support a plausible claim of reprisal.

To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action *because* the employee opposed the practice. *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Even assuming that each of the facts alleged by Mr. Reynolds is true, this Court finds that the facts are insufficient to raise a *plausible* claim of reprisal, particularly as to the third element of a retaliation claim. Mr. Reynolds is correct that a false report to government authorities is a materially adverse action under Title VII. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006); *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008). But even if the report is materially adverse, Mr. Reynolds does not specifically allege, and the complaint does not give rise to a reasonable inference that, the report was filed *because* of the prior discrimination complaint. BOP is statutorily required to report certain conduct to the NPDB, and it would be illogical to find the fulfillment of a statutory duty illegal. Accordingly, Count Nine of Mr. Reynolds' complaint is dismissed.

### F. Venue Under the Little Tucker Act

Count Eight of Mr. Reynolds' complaint, brought pursuant to the Little Tucker Act, alleges that BOP breached the settlement agreement by refusing to produce the SF-50 reflecting resignation rather than termination. Mr. Reynolds claims that BOP's actions prohibited his employment, and $300 monthly salary, as a physician at an outpatient clinic operated by the Air Force. Fourth Am. Compl. ¶ 142. The Little Tucker Act, 28 U.S.C. § 1346(a)(2), waives sovereign immunity for civil actions against the federal government arising from "any express or implied contract with the United States." For suits such as this seeking damages less than $10,000, the Act grants concurrent jurisdiction to federal district courts and the Court of Federal Claims, *id.*, but venue is limited to the district where the plaintiff resides, 28 U.S.C. § 1402(a)(1).

As Mr. Reynolds is a Maryland resident, the U.S. District Court for the District of Maryland is the proper venue for this claim. Mr. Reynolds, however, asks this Court to consider his Little Tucker Act claim under the doctrine of pendent venue.

The D.C. Circuit recognized the doctrine of pendent venue in *Beattie v. U.S.*, 756 F.2d 91, 103 (D.C. Cir. 1984) *abrogated on other grounds by Smith v. U.S.*, 507 U.S. 197 (1993). In doing so, the Circuit reasoned that pendent venue mirrors pendent jurisdiction in that both concepts "embod[y] factors that bear upon judicial economy, convenience, and fairness." *Id*. at 103. In deciding whether to exercise pendent venue, courts should consider factors such as "fairness to the litigants, convenience of the witnesses, and the avoidance of piecemeal litigation." *Id*.

Problems arise in cases where some claims (e.g., Counts Three and Four) are properly venued, while others (e.g., Count Eight) are not. Courts have recognized two approaches to resolving this problem. The first approach focuses on whether any of the claims are controlled by a specific venue provision, and if so, the venue mandated by that provision controls. *See, e.g.*, *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 249 (D.D.C. 2007) ("[T]the authority in this Circuit indicates that when a plaintiff brings a Title VII action, which is covered by Title VII's restrictive venue provision, as well as an action governed by the general venue provision, the narrower venue provision of § 2000e–5(f)(3) controls."); 14D Charles Alan Wright, Arthur R. Miller et al., *Federal Practice & Procedure*, § 3808 (3d ed.) (noting that some courts "evince concern about overriding congressional venue limitations. . . . [T]hus, claims governed by a special venue statute cannot be appended for venue purposes to claims that are governed by the general venue statute."). The second approach, which originated in this district, asks which claim is "primary" and applies the venue for the primary claim to all other claims. *See, e.g.*,

*Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 664 (D.D.C. 1982) (holding that "if one of the causes of action can be considered a principal one and the others are secondary, proper venue must be established for that principal cause of action. This is particularly so if the principal cause of action is governed by a narrower venue provision than the secondary cause of action.") (internal quotations omitted).

Under either approach—and given that this Court has dismissed, with the exception of the FOIA and Privacy Act counts, all of Mr. Reynolds's claims for which this Court was the proper venue—transfer of what remains of this case to the District of Maryland is appropriate. As an initial matter, all of Mr. Reynolds' remaining allegations center on BOP's alleged refusal to produce SF-50's and other documents related to Mr. Reynolds' employment. Maintaining two separate actions to adjudicate (1) whether BOP complied with FOIA and the Privacy Act in producing the SF-50's and other documents; and (2) whether BOP's refusal to produce the SF-50 regarding Mr. Reynolds' resignation/termination violated the settlement agreement would not advance the goals of judicial economy, convenience, fairness, or the avoidance of piecemeal litigation. *Beattie*, 756 F.2d at 103.

Mr. Reynolds' primary remaining claim that BOP blocked his efforts to secure the SF-50 promised in the settlement agreement is controlled by the specific venue provision of the Little Tucker Act. *See* 28 U.S.C. § 1402(a)(1).

Accordingly, Counts Three, Four, and Eight will be transferred to the District of Maryland. As such, any amendment to the complaint in this Court would be futile, and Mr. Reynolds' motion for leave to file is denied.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on January 21, 2014.